UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JEAN G. PIERRE,

                    Plaintiff,                      **REPORT AND RECOMMENDATION**
                                                  **14 CV 5915 (MKB) (ST)**

        v.

AIR SERV SECURITY,

                    Defendant.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

    *Pro se* plaintiff, Jean G. Pierre ("Pierre"), commenced this litigation on October 8, 2014

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"),[1]

alleging that his employer, Air Serv Corporation ("Air Serv" or the "Company"),[2] discriminated

against him on the basis of his national original which resulted in various discipline and ultimately,

his termination. Plaintiff also asserts a claim of retaliation in violation of the Equal Pay Act

("EPA").[3] Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure and Plaintiff opposes the motion.[4] (ECF No. 19-32).  The Honorable Judge

---

[1] Defendant asserts in its motion for summary judgment that Plaintiff alleges that he was discriminated against in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). However, Plaintiff has not pled any violations under these laws.  In construing Plaintiff's pleading as liberally as possible, and in considering Plaintiff's reference to New York Law in his July 7, 2015 letter to Judge Brodie in which he states: "I hope New York State and Federal Laws protect workers from their unfair discharge," the Court considers Plaintiff's claims of discrimination based on Plaintiff's national origin under the NYSHRL and the NYCHRL. (ECF No. 17). *See also* Declaration of Craig R. Benson (hereinafter "Benson Decl.") Exs. B-C. These exhibits contain excerpts from the Deposition of Plaintiff (hereinafter "Pl.'s Tr.") at 190:1-6 (Plaintiff alleges that Air Serv violated the law of the State).

[2] Incorrectly named Air Serv Security in the Complaint.

[3] Plaintiff only pleads a violation of the EPA, however construing his pleading liberally, the Court considers Plaintiff's claims of retaliation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

[4] Plaintiff filed affidavits in opposition to Defendant's motion on September 29, 2015 (ECF No. 19) and on November 3, 2015 (ECF No. 31). Neither of these affidavits addresses Defendant's

Margo K. Brodie referred Defendant's motion to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).  For the following reasons, I respectfully recommend that Defendant's motion for summary judgment be granted in its entirety.

## FACTUAL BACKGROUND

The following facts are undisputed and are supported by admissible evidence.[5]

Plaintiff commenced his employment with Air Serv as a Security Guard with Traffic Control Officer Duties on December 23, 2011. (Def.'s 56.1 Statement ("56.1") ¶ 2, ECF No. 25). Plaintiff was assigned to work at the American Airlines terminal at John F. Kennedy Airport. (*Id*.). Plaintiff's duties included moving traffic and providing security to employees and customers. (*Id*.).

Upon the commencement of his employment, Plaintiff received a copy of the Company's employee handbook, which holds the Company's discrimination and retaliation policies, as well

---

arguments in its motion for summary judgment.  Additionally, on November 9, 2015, Plaintiff filed what he captioned to be an Amended Complaint. In Judge Brodie's April 5, 2016 Order, she construed Plaintiff's "Amended Complaint" as further opposition to the Defendant's motion for summary judgment.  Plaintiff's "Amended Complaint" presents claims against Defendant's counsel relating to events that occurred in the course of Plaintiff's deposition.  Given that these allegations do not relate to the underlying motion for summary judgment, this Court will not consider the claims set forth therein.

[5] Despite *pro se* Plaintiff receiving notice pursuant to Local Rule 56.2 of the requirements of the counterstatement under Local Rule 56.1(b), Plaintiff's submissions fail to comply with the Local Rule.  For the purposes of this motion, Defendant's 56.1 Statement is deemed admitted where supported by the record. *See* Fed. R. Civ. P. 56 (e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]"); E.D.N.Y. L. Civ. R. 56.1(c) ("Each numbered paragraph in the [56.1] statement . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph"); *see also Vinson v. City of New York*, 2007 WL 965338, at *2 (S.D.N.Y. Mar. 30, 2007) (deeming admitted the undisputed facts in defendants' 56.1 statement "that are supported by the record and which [*pro se*] plaintiff has not specifically controverted with admissible evidence").  Despite this, the Court did not rely solely on Defendant's 56.1 submission.  The Court did a thorough examination of the record and the docket in search of evidence that would support Plaintiff's opposition. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[The Court] must be satisfied that the citation to evidence in the record supports the assertion.") (citation omitted).

as the complaint reporting procedure and the Security Officer's Reference Guide, which includes a prohibition on security guards receiving gifts or gratuities. (56.1 ¶¶ 7, 85; Benson Decl. Exs. E, G). Further, Plaintiff formalized his receipt of the handbook by signing an acknowledgment that he would abide by the rules and policies contained therein. (*Id.*) Plaintiff acknowledged that he read and understood the Company's discrimination and anti-harassment policy. (56.1 ¶ 8; Benson Decl. Ex. F). Plaintiff also acknowledged that he understood that Air Serv's policy prohibits security guards from accepting tips. (56.1 ¶ 85; Benson Decl. Ex. G; Pl.'s Tr. 102:5-14). Plaintiff did not complain to anyone at Air Serv about discrimination or harassment prior to his July 31, 2012 termination. (56.1 ¶ 10; Pl.'s Tr. 201:11-202:3). Finally, Plaintiff signed the Company's Vulgar Language Acknowledgment Policy, which prohibited Air Serv's employees from using vulgar language in the workplace and alerting the signatory that any violation of this policy would result in discipline, up to and including termination. (56.1 ¶ 13; Benson Decl. Ex. H).

In the first six months of his employment, Plaintiff received seven disciplinary warnings of varying severity. (56.1 ¶¶ 14-33). Plaintiff received his first warning on December 24, 2011, the second day of his employment with Air Serv, for exceeding the allotted break time. (56.1 ¶ 14; Benson Decl. Ex. I). Plaintiff received his second warning and a suspension on March 31, 2012 for refusing to return to his assigned post after a break and for being disrespectful to his supervisor, Michel Oviedo, over the radio. (56.1 ¶ 15; Pl.'s Tr. 156:3-157:13; Benson Decl. Ex. J). Specifically, when Ms. Oviedo informed Plaintiff that his colleague had not yet had an opportunity for a break and directed Plaintiff to return to his post, Plaintiff refused. Instead, Plaintiff accused

Ms. Oviedo over the radio of not calling one of her friends back from a break instead and told her that "God will punish you."[6] *Id.*

On May 11, 2012, Plaintiff received a written warning for violating one of the Company's work rules and was counseled to respect his co-workers and supervisors after he accused his colleague, Yelitza Nunez, of spying on him. (56.1 ¶¶ 17-25; Pl.'s Tr. 158:7-22, 161:12-163:8, 164:12-165:2, 185:3-20; Benson Decl. Ex. K).  Plaintiff admits that in addition to accusing Ms. Nunez of spying on him, he raised his voice and told her she was nasty. (*Id.*).  Plaintiff again received a written warning for insubordinate behavior on May 17, 2012, when he refused his supervisor Denise Johnson's directive to return to his post after a bathroom break. (56.1 ¶¶ 26-27; Benson Decl. Ex. L).  Indeed, Plaintiff admits that during this interaction, he spoke to his supervisor in a "loud voice" and told her that she should "swear before, ask God to kill your children and your grandchildren of your children." (56.1 ¶¶ 29-30; Pl.'s Tr. 157:7-9, 181:12-17; Benson Decl. Ex. Q).  Plaintiff received another written warning on or about May 31, 2012 for improper personal conduct when he addressed his co-worker with foul language. (56.1 ¶ 31; Benson Decl. Ex. M).  On June 9, 2012, Plaintiff received a written warning for violating work rules by twirling his whistle instead of moving traffic. (56.1 ¶ 32; Benson Decl. Ex. N).  On or about June 23, 2012, Plaintiff's supervisor, Ms. Johnson, issued a verbal warning to Plaintiff for being late to work on February 17, June 15, 22, and 23, 2012 and for having a no-call/no-show violation on January 19, 2012. (56.1 ¶ 33; Benson Decl. Ex. O).

On July 31, 2012, Plaintiff's insubordinate and unprofessional conduct led to his termination. (56.1 ¶¶ 34-60).  Dispatcher Charmaine Thomas assigned Plaintiff to work in the

---

[6] Plaintiff believes he was terminated at this time and then rehired by Air Serv. (56.1 ¶ 94; Pl.'s Tr. 134:8-13).  Air Serv has no record of Plaintiff being terminated and rehired. (56.1 ¶ 94; Declaration of Eric Cuevas, hereinafter "Cuevas Decl." ¶ 21).

"cones" section of the airport, which is the designated security post located in front of the terminal. (56.1 ¶ 34; Cuevas Decl. Exs. F-I).  Despite being given the direction to report to the cones area, Plaintiff outright refused, stating "severely, as a man does" that she could not send him to this post. (56.1 ¶ 34; Pl.'s Tr. 136:15-137:10; Cuevas Decl. Exs. F-I).  When another supervisor, Donald Dabreau, reiterated the directive to report to the assigned post, Plaintiff again refused and yelled that the assignment was discriminatory and abusive. (56.1 ¶¶ 35-36; Pl.'s Tr. 73:13-22, 123:18-20; Cuevas Decl. Exs. F-I).  Plaintiff also yelled and cursed at another supervisor, Raymond Carew, who was a witness to the incident. (56.1 ¶ 51; Cuevas Decl. Ex. H).  Given Plaintiff's aggressive and insubordinate behavior, Ms. Thomas sought the assistance of Ms. Asaro, who attempted to defuse the situation by meeting with Plaintiff in the dispatch area. (56.1 ¶ 38; Pl.'s Tr. 73:23-74:2). Plaintiff told Ms. Asaro that he did not want to work in the cones area. (56.1 ¶ 38; Pl.'s Tr. 74:1-2).  Ms. Asaro then asked Plaintiff to return to work and he refused. (56.1 ¶ 39; Pl.'s Tr. 133:20-23).  Ms. Asaro expressly warned Plaintiff that his refusal to work in the cones section would result in termination, yet he continued to refuse the assignment. (56.1 ¶ 39; Pl.'s Tr. 134:20-135:4; Cuevas Decl. Exs. F-I).  During this altercation, Plaintiff also mentioned that the Company allegedly owed him money. (56.1 ¶ 49; Cuevas Decl. Exs. G-H).  When Ms. Asaro asked Plaintiff to give her his identification badge, he refused and told her to call the Port Authority police. (56.1 ¶ 40; Pl.'s Tr. 133:25-134:3; Cuevas Decl. Exs. F-I).  When the police arrived, they took Plaintiff's badge and returned it to Ms. Asaro. (56.1 ¶ 42; Cuevas Decl. Exs. F, I).  During this exchange, Plaintiff admits that he "yelled" and "screamed" at his supervisor, Ms. Asaro, and told her that she had no right to take his badge. (56.1 ¶ 44; Pl.'s Tr. 144:4-12).  Plaintiff also admits that he told Ms. Asaro, "I don't respect you anymore; you are a liar, even a Harlot mother, who tolerates prostitution in the Company." (56.1 ¶ 45; Benson Decl. Ex. Q at 7 ¶ 9).  The insubordinate,

5

offensive, and abusive behavior that Plaintiff exhibited during this incident, coupled with a violation of work rules and an altercation or fight, resulted in Plaintiff's termination as of July 31, 2012. (56.1 ¶ 58; Cuevas Decl. Ex. F).

Prior to his termination, Plaintiff made multiple requests to have his schedule changed.  In April 2012, Plaintiff requested a schedule change from Mr. Dabreau. (56.1 ¶ 63; Pl.'s Tr. 56:20-57:18; 62:1-8).  When Mr. Dabreau agreed to the schedule change, Plaintiff did not believe him. (56.1 ¶ 63; Pl.'s Tr. 34:19-24, 62:15-63:12).  As such, Plaintiff accused Mr. Dabreau of being a liar and stated that he was "trying to look good in front of the women." (56.1 ¶ 63; Pl.'s Tr. 61:5-63:12).  Plaintiff also requested a schedule change from Gwendolyn Grant, the Human Resources Manager. (56.1 ¶ 64; Pl.'s Tr. 57:4-16).

Additionally, Plaintiff made several complaints about Air Serv's failure to properly compensate him for regular hours worked, as well as certain overtime hours worked.  On April 16, 2012, Plaintiff complained to Ms. Grant about thirteen hours of overtime compensation that he did not receive. (56.1 ¶ 66; Pl.'s Tr. 48:17-51:1).  Plaintiff also complained to Mr. Dabreau about missing overtime compensation on an unidentified date. (56.1 ¶ 67; Pl.'s Tr. 64:24-67:3).  On June 19, 2012, Plaintiff submitted a pay discrepancy form for 13.5 hours worked. (56.1 ¶ 69; Cuevas Decl. Ex. T).  On July 6, 2012, Air Serv issued Plaintiff a check for the June 19, 2012 work. (56.1 ¶ 69; Cuevas Decl. ¶ 10, Ex. D).

Following his termination, Plaintiff wrote a "letter of grievance" to "Ms. Nancy" advising her of "illegal and unlawful activities" by Ms. Asaro, Ms. Johnson, Mr. Dabreau, Ms. Oviedo, and two unidentified black female dispatchers. (56.1 ¶ 77; Benson Decl. Ex. P).  Plaintiff also asked "Ms. Nancy" to investigate sixteen hours of pay that he claimed was owed to him and that he did not receive. (*Id.*).  Plaintiff wrote another letter to "Mr. Frank" and Ms. Grant alleging that Air

Serv had failed to pay his overtime wages from work done on February 13 and July 27, 2012, and identified a discrepancy in his pay from March 9, 2012. (56.1 ¶ 78; Benson Decl. Ex. R).  In this letter, Plaintiff states that Mr. Dabreau told him that he would not work on Plaintiff's payroll discrepancies. (56.1 ¶ 78; Benson Decl. Ex. R, ¶ 4).  Plaintiff also complained that while he worked in various Company posts, including the entrance, parking, departure areas, and the cones, two "powerful traffic guards" never worked more than a few minutes in the cones area. (56.1 ¶ 81; Benson Decl. Ex. R).

Plaintiff filed a formal claim with the New York State Department of Labor ("NYSDOL") relating to unpaid wages from February 13 and February 21, 2012, as well as unpaid overtime on an unspecified date. (56.1 ¶ 70; Cuevas Decl. ¶ 11).  On September 7, 2012, Air Serv issued a check to Plaintiff for the unpaid time from February 13 and February 21, 2012, as well as the unpaid overtime work. (56.1 ¶ 71; Cuevas Decl. ¶ 12, Ex. E).  Plaintiff never cashed that check. (56.1 ¶ 72; Cuevas Decl. ¶ 14).  On or about October 25, 2012, Plaintiff alleged to the NYSDOL that Air Serv also owed him wages from work performed on February 17 and March 2, 2012, in addition to the unpaid wages and overtime compensation sought in his original claim with the NYSDOL. (56.1 ¶ 73; Cuevas Decl. ¶ 13).  Because Plaintiff had not cashed the September 7, 2012 check, Air Serv reissued a new check for the same amount on or about June 7, 2013. (56.1 ¶ 74; Cuevas Decl. ¶ 13).  Plaintiff never cashed this check either. (56.1 ¶ 74; Cuevas Decl. ¶ 15). On December 3, 2014, Air Serv issued a third check for all the money sought in Plaintiffs October 25, 2012 NYSDOL claim. (56.1 ¶ 75; Cuevas Decl. ¶ 16; Benson Decl. Ex. S).  While it is not clear from the record that this check was cashed, Plaintiff testified in his deposition that the NYSDOL "did their job" and that the unpaid overtime issue was essentially resolved. (Pl.'s Tr. 51:11-52:9).

Plaintiff, who is of Haitian origin and whose primary language is French, contends that he was discriminated against because of his language when Ms. Asaro said that she "did not want to speak to [him] with [his] fucking French language."[7] (56.1 ¶¶ 3, 89, 95; Pl.'s Tr. 37:12-16, 38:8-22, 39:22-25, 41:3-8, 215:15-20; Pl.'s Complaint ("Compl.") at 4).  Accordingly, Plaintiff alleges that Air Serv discriminated against him in violation of Title VII of the Civil Rights Act of 1964 and retaliated against him for alleged complaints about his wages in violation of the Equal Pay Act.  On or about February 21, 2013, about 7 months after his termination, Pierre filed a complaint with the New York State Division of Human Rights (the "NYSDHR"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging that Air Serv discriminated against him on account of his national origin and retaliated against him for complaining about race discrimination, in violation of Title VII.[8] (56.1 ¶ 82; Pl.'s Compl. at 7).  In his NYSDHR charge, Plaintiff alleged that Air Serv treated non-American-born employees differently by assigning them to certain posts where there were "few opportunities to make additional money." (56.1 ¶ 83; Pl.'s Compl. at 7).  One location where American-born employees were assigned was "Pick-Up C," a location where Plaintiff alleges the employees could accept tips. (*Id.*).  Plaintiff stated that two guards worked with supervisors to accept tips, but he concedes that one of those guards was Haitian. (56.1 ¶ 84; Pl.'s Tr. 102:11-22).

Additionally, Plaintiff believes he received disciplinary warnings in retaliation for complaints he made to Ms. Grant on April 16, 2012 and to Mr. Dabreau on July 27, 2012

---

[7] Plaintiff does not believe that he received any disciplinary warnings because of his national origin. (56.1 ¶ 96; Pl.'s Tr. 204:24-205:2).  Additionally, Plaintiff does not believe he was discriminated against because of his Haitian national origin. (56.1 ¶ 97; Pl.'s Tr. 40:18-41:3). Rather, he believes he was discriminated against because of his French accent. *Id*.

[8] Though Plaintiff asserted in his NYSDHR complaint that Air Serv retaliated against him based on his complaints of race discrimination, that is not the basis of his retaliation claim in the instant litigation.  Plaintiff's retaliation claim here is based on his complaints regarding wage payments.

concerning his schedule and alleged discrepancies in his pay. (56.1 ¶ 99; Pl.'s Tr. 48:17-51:1, 205:1-208:10).  Plaintiff also believes Mr. Dabreau retaliated against Plaintiff by denying him rest breaks and forcing him to work in the "cones" section of the airport. (56.1 ¶ 100; Pl.'s Tr. 55:18-57:15, 217:15-218:24).  After an investigation, the EEOC was unable to conclude that Plaintiff was subjected to an adverse employment action motivated by discriminatory animus. (56.1 ¶ 87; Pl.'s Compl. at 17-19).

## PROCEDURAL HISTORY

The EEOC issued a right-to-sue letter on September 23, 2014. Plaintiff commenced the instant action *pro se* by filing his Complaint (ECF No. 1) asserting claims of unlawful termination based on his national origin (Haitian) in violation of Title VII and retaliation based on prior complaints of unpaid wages in violation of the Equal Pay Act on October 8, 2014.  Defendant answered the Complaint on December 1, 2014. ("Answer") (ECF No. 10).

Air Serv filed the instant motion for summary judgment on October 27, 2015, claiming that Plaintiff's claim of discrimination is meritless and that he cannot establish any claim of retaliation based on complaints relating to his wages or national origin discrimination.

## ANALYSIS

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When determining whether a genuine issue of fact exists on summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also*

*Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) ("In reviewing a motion for summary judgment, we construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor.").

"[T]he moving party bears the initial burden of establishing that there are no genuine issues of material fact[;] once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted) (alteration in original). Moreover, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat summary judgment. *Anderson*, 477 U.S. at 252. If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court must enter summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

At the summary judgment stage, the Court must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (citations and internal quotation marks omitted). However, even a *pro se* plaintiff cannot simply rely on the allegations in his complaint to withstand summary judgment. *Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996). Plaintiff has failed to submit his own 56.1 Statement here and thus has not specifically controverted Defendant's statements, as required by Local Civil Rule 56.1. However, the Court "must be

satisfied that the citation to evidence in the record supports the [moving party's] assertions." *Vt. Teddy Bear Co. v. 1–800 Beargram Co*., 373 F.3d 241, 244 (2d Cir. 2004) (citation omitted). Reading the record in the light most favorable to Plaintiff, the Court finds that Plaintiff fails to present evidence from which a rational jury could return a verdict in his favor.

### I.   Title VII Discrimination Claims

Plaintiff claims that Air Serv discriminated against him based on his national origin (Haitian) under Title VII.[9]  Title VII makes it an "unlawful employment practice" for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Suits that arise under Title VII fit into one of two categories: "single issue motivation" and "dual issue motivation" cases. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 445 (2d Cir. 1997).  In single issue motivation cases, such as the instant litigation, "'the single issue [is] whether an impermissible reason motivated the adverse action,' which courts analyze under the framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)." *Id.* (alteration in original).  "Under this framework, a plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination." *Watt v. New York Botanical Garden*, 2000 WL 193626, at *4 (S.D.N.Y. Feb. 16, 2000) (citation omitted).[10]  "Establishment of

---

[9] Construing Plaintiff's claims liberally, the Court, as noted above, assumes that Plaintiff intended to assert his rights under the NYSHRL and the NYCHRL.  Because the burden of proof and production under the NYSHRL is identical to that of Title VII, it is appropriate to analyze these claims together for the purposes of this motion. *Sethi v. Narod*, 12 F. Supp. 3d 505, 522 n.3 (E.D.N.Y. 2014).  Plaintiff's claim under the NYCHRL for national origin discrimination, however, "must [be] analyze[d] . . . separately and independently from any federal and state law claims . . . ." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

[10] The Clerk of Court is directed to send Plaintiff the attached copies of all the unreported cases cited herein.

11

the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

To prove a prima facie case, a plaintiff must establish that: "(1) [] he belonged to a protected class; (2) [] he was qualified for the position he held; (3) [] he suffered an adverse employment action; and (4) [] the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for its actions. *Bickerstaff*, 196 F.3d at 446. If defendant meets its burden, the plaintiff must then demonstrate that the legitimate reasons offered are pretextual. *See Meiri v. Dacon*, 759 F.2d 989, 997-98 (2d Cir. 1985). A plaintiff's "mere subjective belief that he was discriminated against . . . does not sustain a . . . discrimination claim." *Sethi*, 12 F. Supp. 3d at 536 (citations omitted) (alteration in original). Rather, a plaintiff must demonstrate "concrete particulars," *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984), that "would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997).

A. <u>Plaintiff's Prima Facie Case of Discrimination</u>

Plaintiff alleges that the following incidents amount to discrimination by Air Serv: (1) that he and other non-American-born employees worked primarily in the ground transportation area so they did not have the opportunity to make additional money (56.1 ¶ 83; Pl.'s Compl. at 7); (2) that he was forced, along with other non-American-born employees, to work overtime without overtime pay (56.1, ¶ 86; Pl.'s Compl. at 7); (3) when he was discharged in May or June 2012 and

then rehired (Pl.'s Tr. 37:19-38:22);[11] and (4) when he was terminated on July 31, 2012. (Pl.'s Tr. 7:14-18).

Plaintiff satisfies the first prong of his prima facie case by virtue of his Haitian national origin. While Plaintiff fails to articulate the evidence supporting a prima facie case as to the second prong, construing his Complaint and the record liberally and in the light most favorable to the Plaintiff, he has also, arguably, satisfied the second prong.[12] However, Plaintiff fails to satisfy the other prongs necessary to satisfy his initial burden. As such, and as addressed in more detail below, each of the alleged incidents of discrimination fail because Plaintiff has not met his burden of showing his prima facie case. *See McDonnell Douglas,* 411 U.S. at 802.

First, Plaintiff alleges that he and other non-American born employees were discriminated against because they worked primarily in areas of the airport that did not give them the opportunity to make additional money. "An inference of discrimination can be raised by 'showing that an employer treated [an employee] less favorably than a similarly situated employee outside his

---

[11] Plaintiff claims that he was terminated in May or June 2012. However, the record reflects no evidence of this termination. (56.1 ¶ 94; Cuevas Decl. ¶ 21). Air Serv records do indicate that Plaintiff was suspended on March 31, 2012 for failing to return to his assigned post after a break and for telling his supervisor over the radio that "God will punish you." (56.1 ¶ 15; Pl.'s Tr. 156:3-157:13). Given the lack of evidence submitted by Plaintiff, the Court assumes for purposes of this motion that his claim regarding his first "termination" actually refers to this March 31, 2012 suspension.

[12] "To show 'qualification' sufficiently to shift the burden of providing some explanation for discharge to the employer, the plaintiff 'need not show perfect performance or even average performance.' Instead, [he] need only make the 'minimal showing' that '[he] possesses the basic skills necessary for performance of [the] job.'" *Gregory v. Daly,* 243 F.3d 687, 696 (2d Cir. 2001), *as amended* (Apr. 20, 2001) (citations omitted). "In a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualification is, of course, easier to draw than in a hiring or promotion case because, by hiring the employee, the employer itself has already expressed a belief that [he] is minimally qualified." *Id.* It is undisputed from the record that Plaintiff was hired into the job by Defendant, and that Plaintiff has a documented history of work in similar positions as a security guard. Thus, it cannot be said that Plaintiff failed to make the "minimal showing" that he possessed the basic skills necessary for performance of the job.

protected group.'" *Sethi*, 12 F. Supp. 3d at 544 (quoting *Abdul–Hakeem v. Parkinson*, 523 F. App'x. 19, 20 (2d Cir. 2013)) (other citations omitted) (alteration in original).  "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Moore v. Kingsbrook Jewish Med. Ctr.*, 2013 WL 3968748, at *9 (E.D.N.Y. July 30, 2013) (citation omitted).  Plaintiff fails to offer any evidence to support the proposition that he is either similarly situated to other employees or that he was treated any differently.  Plaintiff has only pointed to two Air Serv employees who allegedly earned tips and one of those two employees is Haitian. (56.1 ¶ 84).  Different treatment of colleagues within Plaintiff's same protected class does not create an inference of discrimination. *See Moore*, 2013 WL 3968748, at *10 (indicating that "Plaintiff's argument that his termination was a result of racial or national origin animus would be discredited because his alleged comparators . . . are of the same race and national origin as Plaintiff and neither was terminated.").

Moreover, Plaintiff fails to show that he suffered an adverse employment action.  In *Rowe v. Jagdamba, Inc.*, the Second Circuit assumed without deciding that in a profession, such as that of a restaurant server, "'where wage is determined almost solely by tips, the consistent decision to place the plaintiff in a section with fewer customers than anywhere else' could 'amount[ ] to a decreased wage,' and, if combined with other disadvantages, could rise to the level of an 'adverse employment action.'" 302 F. App'x 59, 62 (2d Cir. 2008) (quoting *Reed v. Cracker Barrel Old Country Store, Inc.,* 133 F. Supp. 2d 1055, 1071 (M.D. Tenn. 2000)) (alteration in original). That, however, is not this case.  Not only is Plaintiff's profession unlike that of a restaurant server in that his wages are not based on the earning of tips, but the acceptance of gratuities by Air Serv security officers is also expressly prohibited by company policy. (Benson Decl. Ex. G).  Thus, even if Plaintiff was, as he alleges, consistently assigned to areas that made it less likely for him to earn

tips, his allegation would not rise to the level of a "materially adverse change in the terms and conditions of [his] employment." *Sethi*, 12 F. Supp. 3d at 523.  Because Plaintiff has failed to demonstrate that he suffered an adverse employment action and that this alleged adverse action was linked to Air Serv's alleged discriminatory animus, he has not satisfied his prima facie burden with respect to this claim.

Second, Plaintiff claims that he was discriminated against because he was forced, along with other non-American-born employees, to work overtime without overtime pay. (Pl's Compl. at 7).  Plaintiff identifies several instances wherein he claims to have not been adequately compensated for time worked.[13] (56.1 ¶¶ 66-67, 69-70, 73, 77-78).  Nevertheless, Plaintiff utterly fails to offer any evidence to support the argument that his failure to receive overtime pay was *because* of his national origin.  Despite alleging in his complaint that he and other non-American-born employees were treated differently than American-born employees, Plaintiff fails to identify any of the other non-American-born employees who he claims were subject to the same discriminatory treatment. Because Plaintiff has not offered any evidence linking his allegations about overtime compensation to his national origin, Plaintiff fails to meet his initial prima facie burden as to this incident.  Bare allegations of discriminatory animus, without more, are insufficient to create an issue of material fact for purposes of summary judgment. *See Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000), *superseded by statute on other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp.,* 450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

Third, Plaintiff claims that he was discriminated against based on his national origin when he was discharged in May or June 2012 and then rehired.  Defendant disputes that Plaintiff was

---

[13] Since identifying these alleged discrepancies in his wages, Air Serv issued payment to Plaintiff. (56.1 ¶¶ 69, 71, 74-75.)

terminated prior to July 31, 2012. (56.1 ¶ 94).  In any event, whether Plaintiff was terminated or

merely suspended, it seems the only fact Plaintiff has to support his claim of national origin

discrimination is the comment by his supervisor, Lysa Asaro, who told him that she did not want

to hear his French accent. (56.1 ¶ 89; Pl.'s Compl. at 4 ¶ 8).  Because Plaintiff, as the nonmoving

party, is entitled to all reasonable inferences in his favor, the Court accepts as true that this

comment was made and that it occurred during the incident leading to Plaintiff's suspension.[14]

However, "the stray remarks of a decision-maker, without more, cannot prove a claim of

employment discrimination . . . ." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d

Cir. 2001) (citation omission).  Indeed, "[t]he relevance of discrimination-related remarks . . .

depend[s] . . . on their tendency to show that the decision-maker was motivated by assumptions or

attitudes relating to the protected class." *Sethi*, 12 F. Supp. 3d at 539 (quoting *Tomassi v. Insignia*

*Fin. Grp., Inc.,* 478 F.3d 111, 116 (2d Cir. 2007)) (alterations in original).

> In considering whether a remark is probative of discrimination or whether it is a non-
> probative 'stray remark,' a court should consider factors such as: '(1) who made the
> remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the
> remark was made in relation to the employment decision at issue; (3) the content of
> the remark (i.e., whether a reasonable juror could view the remark as discriminatory);
> and (4) the context in which the remark was made (i.e., whether it was related to the
> decision-making process).'

*Sethi*, 12 F. Supp. 3d at 539 (quoting *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir.

2010)).

 Ms. Asaro allegedly made the comment about Plaintiff's language just prior to suspending

Plaintiff's employment on March 31, 2012. (56.1 ¶ 89).  While the comment may be rude and

---

[14] Plaintiff has claimed this comment happened in May or June 2012. (56.1 ¶ 89).  However, he
has also claimed this comment occurred in the time period of his suspension or "first termination."
(Pl. Tr. 134:9-13).  Construing all facts in the favor of the non-moving party, the Court will assume,
for the purposes of this motion, that this comment was made around the time of Plaintiff's March
31, 2012 suspension.

inappropriate, a reasonable juror likely would not view the remark about Plaintiff's accent as sufficient evidence of discriminatory animus, as a comment about Plaintiff's French language does not equate to a comment about Plaintiff's Haitian national origin.[15]   Indeed, Plaintiff admits as much in his deposition, where he categorically disclaims that Ms. Asaro discriminated against him because of his Haitian national origin. (56.1 ¶ 91; Pl Tr. 41:1-8).  Rather, Plaintiff believes only that he was discriminated against because of his French accent. *Id*.  Given that Ms. Asaro's comment only pertains to Plaintiff's language, and not his national origin, the Court finds it highly unlikely that any rational juror would find this comment discriminatory under Title VII.  Finally, though Ms. Asaro's comment was allegedly made shortly prior to suspending Plaintiff's employment, there is no evidence that her comment was reflective of her decision making process. Rather, it is clear from the record that Plaintiff was suspended on March 31, 2012 as a result of an incident of insubordination wherein Plaintiff refused to return to his post after a break, accused his supervisor, Michel Oviedo, of not calling one of her friends back from break and then told her that "God will punish you."  (56.1 ¶ 15).  Given the context and substance of the remark, the Court concludes that Ms. Asaro's comment is a stray remark and is thus not probative of discrimination with respect to his suspension in March 2012.

Most importantly, even if comments about language could be sufficient evidence of discrimination on the basis of national origin in some hypothetical case, it is patently insufficient

---

[15] As Judge Ross persuasively explained in *Josma v. New York City Health & Hosps. Corp.*, "[w]hile an individual's manner of speaking may be inextricably intertwined with his national origin, this is not always the case. For example, some individuals of Haitian national origin have Haitian accents, whereas others [] do not; likewise, some individuals of Haitian national origin speak English fluently, whereas others do not." 2012 WL 3861171, at *14 (E.D.N.Y. Sept. 5, 2012) (citations omitted).  Plaintiff "cannot circumvent the limitations on protected classes under Title VII, *see* 42 U.S.C. § 2000e–2(a)(l) (prohibiting discrimination only on the basis of 'race, color, religion, sex, or national origin'), simply by equating [his] manner of speaking with [his] national origin or by imputing such an equation to [his] superiors." *Id*.

here.   In the instant case, Plaintiff himself admits that he does not believe that Ms. Asaro discriminated against him because of his Haitian national origin. (56.1 ¶ 91; Pl. Tr. 41:1-8). Because a person's accent is not necessarily connected to his national origin and because Plaintiff expressly disclaims that he was discriminated against because of his national origin, Plaintiff clearly cannot establish an inference of discriminatory intent as to this incident.

Fourth, it seems that Plaintiff might also claim that he was discriminated against based on his national origin when he was terminated on July 31, 2012, though he does not clearly assert this in his complaint.  Again, the only evidence Plaintiff has proffered in the record is Ms. Asaro's comment regarding his French language.  As discussed above, this comment does not satisfy Plaintiff's prima facie burden as he has not linked his termination to any animus relating to his national origin.  Ms. Asaro terminated Plaintiff's employment on July 31, 2012. (56.1 ¶ 58).   Ms. Asaro's comment was made four months prior to Plaintiff's termination. (56.1 ¶ 89).  As noted above, while the comment may be inappropriate and rude, a reasonable juror likely would not view the remark about Plaintiff's French accent as discriminatory as it does not pertain to Plaintiff's Haitian national origin.  Finally, the remark was not made in relation to the decision making process.  Rather, Plaintiff, who had a significant disciplinary record, was terminated on July 31, 2012 following incidents of insubordination.  Given the context of the remark and the time that elapsed between her comment and Plaintiff's termination, this Court concludes that Ms. Asaro's comment is not probative of discrimination with respect to his termination in July 2012.

     **B.  Defendant's Legitimate, Nondiscriminatory**
          <u>Reason for Adverse Employment Actions</u>

Even if Plaintiff had met his burden and demonstrated an inference of discrimination relating to his suspension, Defendant has set forth a legitimate, nondiscriminatory reason for his suspension – that is, Plaintiff's insubordinate and disrespectful behavior. *See Sotolongo v. New*

*York City Transit Auth.*, 216 F.3d 1073 (2d Cir. 2000) (summary order) (Employer suspended plaintiff after he refused work instructions and issued threats of violence.   Plaintiff's insubordination and the employer's concern for the safety of others constituted a legitimate, nondiscriminatory reason for its employment action.).   Thus, the burden shifts back to Plaintiff to present sufficient admissible evidence that the legitimate reason Air Serv offered was a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802-04.   This he has utterly failed to do.

Similarly, even if Plaintiff had met his "*de minimis*" burden of establishing a prima facie case of discrimination with respect to his termination, Air Serv presented a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.   Plaintiff refused to abide by the directive of his supervisor to go to his designated work area, he yelled at his supervisors, and he refused to turn in his badge when directed to do so. (56.1 ¶¶ 34-35, 38-40).   Terminations resulting from an employee's insubordination constitute a legitimate, nondiscriminatory reason for the purposes of Title VII. *See Rikhy v. AMC Computer Corp.*, 2003 WL 1618529, at *4 (S.D.N.Y. Mar. 28, 2003), *aff'd*, 95 F. App'x 388 (2d Cir. 2004) ("Insubordination and threatening behavior both constitute legitimate nondiscriminatory reasons for discharge in this Circuit").

C.   Evidence of Pretext

Given Air Serv's legitimate, nondiscriminatory reasons for its employment actions, the burden shifts back to Plaintiff to present sufficient admissible evidence to establish that the legitimate reasons Air Serv offered for its actions were pretextual.   Plaintiff has failed to satisfy his burden.

> To avoid summary judgment, Plaintiff must offer evidence from which a reasonable jury could conclude by a preponderance of the evidence that . . . national origin discrimination played a role in the adverse action taken by Defendant.   A "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors."

*Moore*, 2013 WL 3968748, at *13 (citations omitted).  Plaintiff has failed to offer any admissible evidence to support his claims that Air Serv's actions were based on Plaintiff's national origin.  Plainly, the record does not support any nexus between Air Serv's employment decisions and Plaintiff's allegations of national origin discrimination.  Indeed, Plaintiff himself concedes that he was not discriminated against based on his national origin.  Because Plaintiff has not met his burden of showing pretext, his claims fail for this reason as well.  Accordingly, Defendant's motion for summary judgment on Plaintiff's Title VII, NYSHRL, and NYCHRL claims should be granted.[16]

## II.    Retaliation Claims

Plaintiff also claims that Air Serv retaliated against him in violation of the Equal Pay Act.  The Equal Pay Act, a subset of the FLSA, prohibits discrimination relating to the payment of wages based on sex.[17]  Here, Plaintiff does not allege that he did not receive standard wage or overtime

---

[16] As indicated above, the Court interprets Plaintiff's claims liberally and thus construes his claim to also fall under the NYCHRL.  "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . ." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  To state a claim for discrimination under the NYCHRL, a "plaintiff need only show that [his] employer treated [him] less well, at least in part for a discriminatory reason.  The employer may present evidence of its legitimate nondiscriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions." *Id.* at 110 n.8 (citations omitted) (alteration in original).  A plaintiff may challenge a defendant's nondiscriminatory reason by "present[ing] evidence of pretext and independent evidence of the existence of an improper discriminatory motive." *Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 40, 936 N.Y.S.2d 112, 121 (1st Dep't 2011).  Alternatively, "the plaintiff may leave unchallenged one or more of the defendant's proffered reasons for its actions, and may instead seek only to show that discrimination was just one of the motivations for the conduct." *Id*.  As indicated *supra*, Plaintiff has made no showing that he was treated differently because of his national origin.  Further, Plaintiff has failed to present evidence that supports a finding that Air Serv's actions are linked in any way to a discriminatory animus.  As such, his discrimination claim also fails under the NYCHRL.

[17] "To prove discrimination under the Equal Pay Act, a Plaintiff must show that: 'i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on

payments, while female coworkers did.  Rather, Plaintiff alleges that he made complaints relating to a failure to be paid certain wages which resulted in Air Serv allegedly retaliating against him. The anti-retaliation provision of the FLSA makes it unlawful for "any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under . . . this chapter, or has testified or is about to testify in any such proceeding . . . ." 29 U.S.C. § 215(a)(3).  New York law contains a similar provision. Under the NYLL, "[n]o employer . . . shall discharge . . . or retaliate against any employee [] because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of the [NYLL]." NYLL § 215(1)(a).

Claims alleging retaliation under the FLSA and NYLL follow the *McDonnell Douglas* framework.  "To establish a prima facie claim of retaliation under the FLSA and the New York State analogue, a plaintiff must show: '(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013) (citing *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)).  Once the plaintiff satisfies his prima facie burden, the defendant must articulate a "legitimate, non-discriminatory reason for the employment action." *Mullins*, 626 F.3d at 53 (citation omitted).  Upon the Defendant's showing of a legitimate,

---

jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions.'" *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (citation omitted).  Because Plaintiff at no point in his complaint or in the record alleges he was discriminated against because of his sex or gender, the Court will not consider this claim.  Rather, the Court interprets Plaintiff's claims liberally and thus understands Plaintiff to be making a claim of retaliation under the FLSA and the NYLL.

nondiscriminatory reason for the employment action, the "plaintiff must produce 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action.'" *Id*. at 53-54 (citation omitted).

"As the Supreme Court recently made clear, to satisfy the first prong of the test for a prima facie claim of retaliation, 'a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Kassman*, 925 F. Supp. 2d at 472 (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 14 (2011)).  The requirement is similar under the NYLL, for while "[a]n employee need not cite a specific statute . . . her 'complaint to the employer [must] be of a colorable violation of the statute.'" *Kassman*, 925 F. Supp. 2d at 473 (quoting *Castagna v. Luceno,* 2011 WL 1584593, at *12 (S.D.N.Y. Apr. 26, 2011)).

Plaintiff alleges that he was retaliated against by Air Serv in the following ways: 1) Air Serv failed to change his schedule and routinely assigned him to work in the "cones" area; 2) Air Serv disciplined him in retaliation for internal complaints he made regarding alleged unpaid overtime and discrepancies in his pay checks. (56.1 ¶ 99; Pl.'s Tr. 48:17-51:1, 205:1-208:10); and 3) Plaintiff's employment was terminated. (56.1 ¶¶ 100, 108).

At the outset, it is worth noting that Plaintiff's claim that he was retaliated against by Air Serv when it failed to change his schedule or routinely assigned him to the cones area without relief fails as a matter of law under the FLSA and the NYLL.  Plaintiff claims this retaliation was a result of his letter to Ms. Grant identifying Ms. Asaro and Mr. Dabreau as individuals who were "stealing money" and "mak[ing] business" in the company. (Pl.'s Tr. 218:5-219:11). "Even taking these allegations as true, however, . . . [this] complaint[] [does not] rise[] to the level of specificity

required to state a retaliation claim under the FLSA or the New York Labor Law, as there is no indication that [] Plaintiff[] [was] actually complaining of [FLSA] or [NYLL] violations such that these complaints constituted 'an assertion of rights protected by the statute' and a 'call for their protection.'" *Kassman*, 925 F. Supp. 2d at 473 (quoting *Kasten*, 563 U.S. at 14).[18]

With respect to Plaintiff's remaining two claims of retaliation — 1) that Air Serv disciplined him in retaliation for oral complaints he made regarding alleged unpaid overtime and discrepancies in his pay checks and 2) that his employment was terminated — Plaintiff has not met his burden of establishing a prima facie case of retaliation.  As an initial point, this Court has serious doubts about whether Plaintiff engaged in any protected activity under the FLSA or the NYLL.[19]  The Second Circuit recently held in *Greathouse v. JHS Sec. Inc.* that oral complaints to employers are actionable for purposes of a retaliation claim under the FLSA only when the oral complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." 784 F.3d 105, 107 (2d Cir. 2015) (quoting *Kasten*, 563 U.S. at 14).

First, Plaintiff alleges that he complained about wage discrepancies to Ms. Grant and Mr. Dabreau. (56.1 ¶ 99; Pl.'s Tr. 48:17-51:1, 64:24-65:5, 205:1-208:10; Benson Decl. Ex. Q). Specifically, Plaintiff claims to have told Ms. Grant that his pay check was always short (Benson Decl. Ex. Q) and Mr. Dabreau that he was not paid for the thirteen hours that he was owed when

---

[18] Further, Plaintiff failed to submit this alleged letter as an attachment to his affidavits in Plaintiff's Opposition to Defendant's Motion and has not included it as an exhibit anywhere else in the record of this case.  Thus, the Court cannot consider the actual contents of the letter for the purposes of this motion beyond Plaintiff's sparse description in his deposition transcript and various motion papers, none of which make the requisite assertion of protected rights required by law.

[19] In New York, an internal complaint to an employer is explicitly protected. *See* NYLL § 215(1)(a)(i).

he worked overtime due to filming that was taking place for the television program Law and Order. (Pl.'s Tr. 64:24-65:5).  Further, he claims that those thirteen hours should be paid at a rate of time and one half. (Pl.'s Tr. 66:11-17).   The record seems to reflect that the only complaints to Defendant prior to Plaintiff's termination are those identifying a discrepancy in his paychecks rather than any invocations of his rights under the law or alleged violations of the law.  If that is the case, then Plaintiff's "complaints" do not qualify as protected activity under the FLSA or the NYLL. *See Dunn v. Sederakis,* 143 F. Supp. 3d 102, 111-14 (S.D.N.Y. 2015).  While the Court must draw all reasonable inferences in favor of the nonmoving party, Plaintiff's failure to set forth any evidence on this point is fatal to his claim.

Even if Plaintiff did indeed engage in protected activity, he must then show that the employment actions Air Serv took were disadvantageous to him.   "The Court recognizes that the Second Circuit has defined an 'adverse employment action' as a 'materially adverse change,' and recently has emphasized the word 'change.'" *Sethi*, 12 F. Supp. 3d at 528 n.8 (citing *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) and *Mills v. S. Conn. State Univ.,* 519 F. App'x. 73, 74 (2d Cir. 2013) (summary order) (finding that various incidents including a hug, intimidating behavior, shunning by colleagues and refusal to accommodate scheduling requests do not constitute adverse actions as they do not reflect "a materially adverse *change* in the terms and conditions of employment")).  Plaintiff has not shown that all of the alleged employment actions that Air Serv took were disadvantageous.  For instance, while termination certainly constitutes a disadvantageous employment action, all disciplinary warnings do not *per se* constitute a disadvantageous employment action and Plaintiff has not shown that these reprimands had any effect on the terms and conditions of his employment.  *See Chang v. Safe Horizons,* 254 F. App'x 838, 839 (2d Cir. 2007) (summary order) (noting "that oral and

written warnings do not amount to materially adverse conduct in light of [the Second Circuit's] reasoning in *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006), in which [the Court] stated that '[t]he application of the [employer's] disciplinary policies to [the employee], without more, does not constitute adverse employment action.'"). Similarly, even if Plaintiff was, in fact, assigned to "the cones" in response to his complaints about wage violations, denials of his requests to be assigned to a different area or have his schedule changed do not constitute materially adverse changes in the terms of his employment. *See Mills*, 519 F. App'x. 73 at 74.

Further, there is nothing in the record to suggest that a causal connection exists between the protected activity that Plaintiff alleges that he engaged in and the alleged adverse employment actions. Rather, to the contrary, the record shows that Plaintiff was disciplined many times *in advance of* his alleged complaints about wage discrepancies thereby destroying any inference that he was disciplined in retaliation for protected activity. (56.1 ¶¶ 14-33). Moreover, Plaintiff offers no evidence suggesting that his termination had anything to do with his alleged wage complaints.

Assuming, *arguendo*, that Plaintiff met his prima facie burden, Air Serv has set forth a legitimate nondiscriminatory reason for its actions. As to the allegation that he was disciplined because of his complaints, Air Serv states that any discipline Plaintiff received was because of his insubordinate or abusive conduct or violations of company policies. (56.1 ¶¶ 14-33). As to the allegation that his employment was terminated because of his alleged protected activity, Air Serv states that it terminated Plaintiff's employment because of his insubordinate and egregiously disrespectful behavior towards multiple supervisors on July 31, 2012. (56.1 ¶ 58). As discussed in the context of Plaintiff's Title VII claims, these constitute legitimate, non-retaliatory reasons for the adverse employment actions. Thus, the burden shifts back to Plaintiff to show that the legitimate, nonretaliatory reason presented by the Defendant is pretextual. Plaintiff has not

presented any evidence to support his claims, let alone show that Defendant's proffered reasons for its employment actions were false.  Bare conclusory arguments of retaliation, without more, are insufficient to establish pretext.  *See Pointdujour v. Mount Sinai Hosp.*, 121 F. App'x 895, 897-98 (2d Cir. 2005) (summary order).  As such, the Court recommends that Defendant's motion for summary judgement be granted as to Plaintiff's claims of retaliation under the FLSA and the NYLL.

Interpreting Plaintiff's claims liberally, it seems Plaintiff also alleges that Air Serv retaliated against him in violation of Title VII.[20] (Pl.'s Compl. at 9).  Retaliation claims that arise under Title VII are also subject to the *McDonnell Douglas* burden-shifting framework. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).  "First, the plaintiff must establish a prima facie case" of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute*, 420 F.3d at 173.  If Plaintiff meets his prima facie burden, then the burden shifts to the "defendant to articulate a non-discriminatory reason for its adverse employment action and then for the plaintiff to show that retaliation was the but-for cause of the adverse action." *Husser v. New York City Dep't of Educ.*, 137 F. Supp. 3d 253, 272 (E.D.N.Y. 2015).  To establish the causal link, Plaintiff must establish "that the unlawful retaliation would not have occurred in the absence of the alleged

---

[20] Construing Plaintiff's claims liberally, the Court, as noted above, also assumes that Plaintiff intended to assert his rights under the NYSHRL and the NYCHRL.  Because the burden of proof and production under the NYSHRL is identical to that of Title VII, it is appropriate to analyze these claims together for the purposes of this motion. *Sethi*, 12 F. Supp. 3d at 522 n.3. Plaintiff's claim under the NYCHRL for retaliation, however, "must [be] analyze[d] . . . separately and independently from any federal and state law claims . . . ." *Mihalik,* 715 F.3d at 109.

wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

Again, Plaintiff has not provided any evidence in this case to meet his prima facie burden. While filing a charge with the EEOC or filing a lawsuit in federal court does qualify as a protected activity for the purposes of a retaliation claim under Title VII,[21] Plaintiff is unable to establish causation.  Plaintiff's employment was terminated on July 31, 2012 and these complaints were not filed until February 21, 2013 and October 8, 2014, respectively.  Because the only possible protected activity alleged in the record occurred *after* his termination, Plaintiff cannot show and has not shown how Air Serv could have retaliated against him for his protected conduct.  Given Plaintiff's inability to meet his prima facie burden, the Court recommends that Defendant's motion for summary judgment as to this claim be granted.[22]

## CONCLUSION

In summary, this Court is persuaded that, viewing the evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, a reasonable jury could not conclude that Air Serv discriminated against Plaintiff in violation of Title VII, the NYSHRL, or the NYCHRL, nor could a reasonable jury conclude that Air Serv retaliated against Plaintiff in

---

[21] "The filing of the EEO complaints is protected activity and satisfies the first element of the test for unlawful retaliation" pursuant to Title VII. *Randall v. Potter*, 2004 WL 439491, at *7 (S.D.N.Y. Mar. 9, 2004).

[22] Interpreting Plaintiff's allegations liberally, the Court interprets Plaintiff to also file a claim of retaliation under the NYCHRL. To prevail on a claim of retaliation under the NYCHRL, a "plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citations omitted).  Any alleged action that Plaintiff took to oppose Air Serv's alleged discrimination occurred *after* his termination. Therefore, Plaintiff cannot and has not shown how Air Serv could have retaliated against him for his protected conduct. Consequently, Plaintiff has not met his burden under the NYCHRL and thus this Court recommends that Defendant's motion for summary judgment as to this claim be granted as well.

violation of the FLSA, the NYLL, Title VII, the NYSHRL, or the NYCHRL.  Accordingly, I recommend that Defendant's motion for summary judgment be granted in its entirety.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

Dated: Brooklyn, New York
     July 28, 2016

                                                    /s/
                                          Steven L. Tiscione
                                          United States Magistrate Judge
                                          Eastern District of New York

28